UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

NILHAN FINANCIAL, LLC,

Debtor.
________________________________________/

CHITTRANJAN THAKKAR,

Appellant,

v.

Case No.: 8:19-cv-1122-T-36
Bankruptcy Case No.: 8:17-bk-03597-MGW

KING BLACKWELL ZEHNDER &
WERMUTH, PA,

Appellee.
________________________________________/

**OPINION**

Chittranjan Thakkar ("Appellant"), proceeding *pro se*,[1] appeals the bankruptcy court's Order Overruling Objection to Claim Number 6 Filed by King, Blackwell, Zehnder & Wermuth, P.A. (the "Order Overruling Objection"). (Doc. 1). The bankruptcy court overruled an objection filed by Niloy Thakkar, in which Appellant joined, to Proof of Claim Number 6 of King, Blackwell, Zehnder & Wermuth, P.A ("Appellee"). (Doc. 7-2 at 1–2). The bankruptcy court, accordingly, allowed Claim Number 6, filed by Appellee, in the amount of $83,988.41. *Id.* Appellant has filed his brief, (Doc. 12), and Appellee has filed its brief, (Doc. 13).

[1] Appellant was represented by counsel below, but his counsel withdrew following the initiation of this appeal. (Docs. 6, 8).

Upon due consideration of the record, the parties' submissions, and otherwise being fully advised in the premises, the Court concludes that the Order Overruling Objection should be affirmed.

## I. BACKGROUND

Several years ago, Appellant, Nilhan Financial, LLC ("Nilhan"), and other entities were defendants in two separate state court lawsuits: *Good Capital Group, Inc. v. Orlando Gateway Partners, LLC*, No. 2009-CA-039746-O (Fla. 9th Cir. Ct.) and *Good Gateway, LLC v. Orlando Gateway Partners, LLC*, No. 2010-CA-015315-O (Fla. 9th Cir. Ct.) (collectively, the "State Court Actions"). *See* (Docs. 7-16, 7-19). Appellant is the manager of Nilhan and also holds equity in the entity. (Doc. 11 at 105:6–8).

On August 6, 2012, Nilhan, Orlando Gateway Partners, LLC, Nilhan Hospitality, LLC, Niloy & Rohan, LLC, NCT Systems, Inc., Niloy, Inc. d/b/a DCT Systems (collectively, the "Thakkar Entities"), and Appellant retained Appellee, a law firm in Orlando, Florida, to defend them in the State Court Actions. (Doc. 7-13 at 1). This retention was memorialized in an agreement (the "Engagement Agreement"), which Appellant signed individually and as manager of each of the Thakkar Entities. *Id.* at 5–6. The Engagement Agreement required the Thakkar Entities to provide Appellee with an initial retainer in the amount of $10,000.00. *Id.* at 3. The Engagement Agreement also advised that Appellee's attorneys would bill against this retainer until its depletion. *Id.* at 3–4. Furnished monthly invoices would detail the rendered legal services, the total fee charged, and any out-of-pocket costs paid by Appellee. *Id.* Appellee reserved the right to withdraw at any stage of the litigation if its fees and costs were not being timely paid. *Id.* at 4. The Engagement Agreement also contained a merger clause. *Id.*

Attorneys of Appellee noticed the state court of their appearance on behalf of the Thakkar Entities on the same day as the Engagement Agreement's execution. (Docs. 7-17 at 2, 4; 7-20 at 3, 6). At the time of Appellee's retention, the dockets in each of the State Court Actions exceeded twenty-five pages. (Docs. 7-18 at 48–84; 7-21 at 144–167). By January 31, 2013, $83,988.41 was due to Appellee, which included previous balances owed. (Doc. 7-14 at 70, 72). Along the way, payments had stopped. *See* (Docs. 7-22, 7-23, 7-24).

On March 20, 2017, Moffa & Breuer, PLLC filed an involuntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code against Nilhan. (Doc. 7-5 at 3). Appellee filed its Proof of Claim for the $83,988.41 in owed legal fees on September 28, 2017 (the "Claim"). (Doc. 7-48 at 3). Through counsel, Niloy Thakkar filed an objection to the Claim—claim number 6—on August 15, 2018 (the "Objection"). (Doc. 7-5 at 45). The Objection raised the following arguments: (1) Niloy Thakkar, as movant, believed that the Claim was "subject to valid defenses"; (2) Appellee had failed to attach an engagement agreement between Nilhan and Appellee; (3) the invoices attached to the Claim were addressed to Appellant, not Nilhan; (4) "[o]n information and belief, at least some of the fees" charged by Appellee were for entities other than Nilhan "in the absence of a written agreement by Nilhan[] to assume responsibility for those fees, and as a result any such claim is barred by Fla. Stat. § 725.01"; and (5) to the extent that Appellee sought to recover fees owed by Appellant from Nilhan, the Claim constituted an impermissible "reverse veil-piercing action brought against a non-shareholder manager" of Nilhan. (Doc. 7-6 at 2). Appellant joined in the Objection on November 6, 2018. (Docs. 7-5 at 58; 7-9 at 1).

The bankruptcy court held a trial on the Objection to the Claim, and Appellant's joinder therein, on April 15, 2019. (Docs. 7-10 at 1; 7-5 at 72). The bankruptcy court heard testimony during the trial. Specifically, Appellant called himself as a witness, and Appellee called attorneys

Taylor Ford ("Ford") and Bruce Blackwell ("Blackwell"). The parties also submitted evidence. (Doc. 11 at 93:23–25, 94:1–6). During the trial, Appellant testified, among other things, that the Thakkar Entities hired Appellee because attorneys of a Georgia law firm retained as lead counsel by the Thakkar Entities in the State Court Actions ("Georgia Counsel") had advised Appellant that local counsel was needed. *Id.* at 107:22–25, 108:1–6. Appellant testified to his understanding that Georgia Counsel would serve as the "quarterback" and would complete "all the heavy lifting." *Id.* at 160:19–24.

At the conclusion of the trial, the bankruptcy court overruled the Objection and allowed the Claim in full. *Id.* at 222:22–23. Relevant here, the bankruptcy court found that a number of entities were named as defendants in the State Court Actions and that Appellee's attorneys represented all of the Thakkar Entities. *Id.* at 220:10–14. The bankruptcy court also found that the invoices were joint and several to the clients. *Id.* at 220:19–20. Finally, after reciting the bases for finding that the legal fees in the Proof of Claim were reasonably incurred, the bankruptcy court found that there had been "no complaint about reasonableness." *Id.* at 222:7–12. The bankruptcy court entered the Order Overruling Objection after the trial, which overruled the Objection and Appellant's joinder therein "[f]or the reasons stated orally and recorded in open Court" during the trial. (Doc. 7-2 at 1). Appellant appealed the Order Overruling Objection to this Court on May 9, 2019. (Doc. 1 at 1).

## II.     STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). The Court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). The district court reviews legal conclusions of the bankruptcy court *de novo* and reviews

the bankruptcy court's findings of fact for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Thus, in reviewing the bankruptcy court's factual findings, the district court must accept the factual findings, unless they are clearly erroneous. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (internal quotation marks omitted). Mixed questions of law and fact are reviewed *de novo*. *In re Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007).

## III. ANALYSIS

Appellant raises two limited issues on appeal.[2] The Court will address each of these narrow issues.

### A. Joint and Several Liability and Statute of Frauds

Appellant contends that the bankruptcy court's finding that Nilhan was obligated to pay the attorneys' fees and costs of Appellee's attorneys in performing work for other entities was "unfounded" because the Engagement Agreement did not contain any joint and several liability language. (Doc. 12 at 8). Appellant argues that this practice runs aground of Florida's statute of frauds, Fla. Stat. § 725.01, because Nilhan has been held liable for another party's debts in the absence of a written agreement. *Id.* Concluding six sentences of argument, Appellant contends

---

[2] As noted, this Court has jurisdiction over final orders of bankruptcy judges, 28 U.S.C. § 158(a), and a bankruptcy court's order overruling a party's proof of claim constitutes a final decision where it leaves no unresolved dispute regarding the merits of the claim, *see In re PMF Enters., Inc.*, 653 F. App'x 903, 903–04 (11th Cir. 2016). As the Order Overruling Objection did not leave any unresolved dispute regarding the merits of the Claim, the Order Overruling Objection constitutes a final order of the bankruptcy court for purposes of this appeal.

that, on this basis, Nilhan "should not be responsible for the payment of attorneys' fees and costs incurred by [Appellee's] other clients." *Id.*

Florida's statute of frauds provides:

> No action shall be brought . . . whereby to charge the defendant upon any special promise to answer for the debt . . . of another person . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01.

Thus, the statute "requires a written contract guaranteeing the debt of another to be signed by the person to be charged." *First Guaranty Corp. v. Palmer Bank & Trust Co. of Fort Myers, N.A.*, 405 So. 2d 186, 188 (Fla. 2d DCA 1981).

Appellant's argument that the bankruptcy court erred in finding joint and several liability renews the same argument that he raised in the Objection—that Nilhan did not agree to assume responsibility for fees for other clients and that the Claim is barred by the statute of frauds. "An objection must contain some substantial factual basis to support its allegation of impropriety and overcome the creditor's prima facie case." *In re Baggett Bros. Farm Inc.*, 315 F. App'x 840, 843 (11th Cir. 2009) (internal quotation marks and citation omitted). "The creditor retains the ultimate burden of persuasion as to the amount of the claim." *In re Oliver*, 306 F. App'x 458, 460 (11th Cir. 2008) (internal quotation marks and alteration omitted). One of the grounds for objecting to the Claim, as asserted by Niloy Thakkar in the Objection, in which Appellant joined, was that "[o]n information and belief, at least some of the fees claimed are for entities other than Nilhan [] in the absence of a written agreement by Nilhan Financial to assume responsibility for those fees, and as a result any such claim is barred by Fla. Stat. § 725.01." (Doc. 7-6 at 2). The bankruptcy court recognized this argument as one of the grounds raised in the Objection in issuing the ruling

below. (Doc. 11 at 218:1–2). However, as articulated below, the bankruptcy court rejected this argument.

The bankruptcy court treated the Claim as *prima facie* valid and looked to Appellant to rebut the Claim. *Id.* at 94:22–24. Appellant offered slim evidence to substantiate this objection. Appellant testified that the legal work to be completed in the State Court Actions was “primarily on behalf of Orlando Gateway Partners and some [work was on behalf of] Nilhan Hospitality, LLC,” while “there was very, very little, if any, activity related to Nilhan,” which “ultimately got the defense verdict.” *Id.* at 107:13–18. But Appellant did not offer any explanation or further support for this conclusory statement. The basis for claiming that Appellee’s legal services were required for only some of the Thakkar Entities is unclear, particular when the Thakkar Entities were defendants in the State Court Actions and, together with Appellant, retained Appellees’ attorneys for representation. This testimony is also undercut by Appellant’s later testimony that he did not recall voicing an objection to the invoices, which were addressed to him, until months after the retention of Appellee’s attorneys. *Id.* at 139:22–24, 177:21–25, 178:1. Although Appellant could not recall receiving specific invoices, he recalled receiving invoices for considerable sums from Appellee, and he did not dispute that he would have had availability to review invoices. *Id.* at 134:9–12, 137:23–25, 138:1–6. Nonetheless, he did not present any evidence below that he objected to the collective billing by Appellee’s attorneys at any point during the State Court Actions.

Further, Appellant did not present any interpretation of the Engagement Agreement to support his assertion that Appellee’s attorneys were prohibited from billing the entities

collectively.[3] Likewise, there was no testimony regarding the applicability of the statute of frauds. Appellant did not present evidence, through testimony or otherwise, specifying the work that was purportedly completed for only other entities, but now charged to Nilhan. Despite these many deficiencies, Appellant's counsel remarked in his closing argument that "[t]he idea that the Debtor here is being charged for services that clearly were not rendered to the Debtor in cases that the Debtor was not even involved in for periods of time I think is somewhat problematic as well." *Id.* at 217:8–11.

On the other hand, Ford testified that Appellee's attorneys deliberately included all of the Thakkar Entities as signatories on the Engagement Agreement for two reasons: to ensure that their representation applied to all entities at risk of an adverse judgment in the State Court Actions and also to ensure that the firm's attorneys would have a payor for the invoices, as Appellee was the fifth or sixth firm retained by Appellant. *Id.* at 175:7–14. Ford emphasized that this practice was to ensure joint and several liability for payment from the Thakkar Entities. *Id.* at 175:15–18. Ford highlighted that the Engagement Agreement refers to the Appellant and the Thakkar Entities, including Nilhan, collectively as "you." *Id.* at 194:6–9. The Engagement Agreement, which was before the bankruptcy court, clearly contemplates joint representation of Appellant and the Thakkar Entities, providing, "It is our understanding you are requesting we represent both Mr. Thakkar, individually, as well as the various corporate entities identified above in which Mr.

---

[3] The only instance of Appellant mentioning joint and several" during trial stems from his response to a question from Appellee's counsel as to whether Appellant acknowledged the Engagement Agreement's merger clause, in which Appellant replied, "I don't see the 'joint and several clause' that you were referring to, sir." (Doc. 11 at 130:21–25, 131:1–6). Further, on cross-examination, Appellant's counsel asked whether the Engagement Agreement used the term "joint and several liability," to which Ford did not dispute that the Engagement Agreement did not contain that specific term. *Id.* at 194:11–17.

Thakkar has an interest, having determined that no conflict currently exists precluding our *joint representation*." (Doc. 7-13 at 2) (emphasis added).

Ford emphasized that the plaintiffs in the State Court Actions were seeking a judgment and that he suspected that they did not care which one of the defendants they collected from. (Doc. 11at 201:15–17). To that end, Appellee's attorneys sought to protect Appellant and all Thakkar Entities, including Nilhan, and ensure that nothing "got through the net in one of the cases," which would have posed "a risk that a judgment could have been attached" to Nilhan. *Id.* at 201:16–23. Although the plaintiffs in one of the state court actions filed a second amended complaint which may have dropped Nilhan as a defendant, Nilhan's involvement in that case did not end: discovery was propounded as if Nilhan was still a party to the case, plaintiffs listed Nilhan as a party to that lawsuit from time to time, and a lis pendens was filed against Nilhan. *Id.* at 180:14–19. Ford and Blackwell admitted that the attorneys did not parse out tasks for each defendant in the State Court Actions. *Id.* at 191:19–22, 212:20–24. However, Blackwell explained that they did not parse out the tasks by entity because "there was so much going on that could happen to each and every one of these entities at various times, they were all at risk." *Id.* at 213:3–7.

The bankruptcy court rejected Appellant's argument—the same one made now—that at least some of the legal fees were for other clients, in the absence of a written agreement to assume responsibility for those fees, and the claim was thus barred by the statute of frauds. The bankruptcy court found that a number of entities were named as defendants in the State Court Actions, Appellee represented all of the Thakkar Entities in connection therewith, and that the billing was joint and several to the collective clients. *Id.* at 220:10–20.

The bankruptcy court's factual findings supporting its rejection of Appellant's objection must be accepted, unless they are clearly erroneous. *In re JLJ, Inc.*, 988 F.2d at 1116. Preliminarily,

the bankruptcy court did not clearly err in finding that attorneys of Appellee represented Appellant and the Thakkar Entities in the State Court Actions. Appellant acknowledged the Engagement Agreement during his testimony and admitted that Appellee was retained by him and the Thakkar Entities in the State Court Actions. (Doc. 11 at 106:22, 107:4–12). Appellant also testified that he signed the Engagement Agreement on behalf of Nilhan and that Nilhan was a signatory to the Engagement Agreement. *Id.* at 127:11–18. Ford similarly acknowledged the Engagement Agreement and testified that Appellee's attorneys represented Appellant and the Thakkar Entities in the State Court Actions. *Id.* at 173:1–18. Blackwell likewise acknowledged the retention. *Id.* at 205:11–13. The parties, therefore, did not dispute the existence of the Engagement Agreement or that Appellee's attorneys were retained by Appellant and the Thakkar Entities in connection with the State Court Actions. The bankruptcy judge's factual findings regarding the amount of work performed by Appellee's attorneys also enjoy substantial evidentiary support. As shown above, Appellant offered slim support to substantiate his objection. He likewise fails to do so now.

The Engagement Agreement is a written agreement whereby Appellee's attorneys agreed to provide legal representation to Appellant and the Thakkar Entities, including Nilhan, in exchange for compensation. The Engagement Agreement referred to Appellant and the Thakkar Entities collectively and provided for "joint representation." Appellant and each of the Thakkar Entities were signatories to the Engagement Agreement. The record clearly establishes that Appellee's attorneys performed extensive work for Appellant and the Thakkar Entities, including Nilhan, and payments subsequently ceased. Appellant has not provided, on appeal or below, nor has the Court found, any support for Appellant's proposition that a written agreement for the provision of legal services between attorneys and clients, all of whom sign the agreement and are represented, must specify that the representation is joint and several among the clients in order for

a court to find such joint and several representation, particularly where the clients are billed collectively without objection. In the absence of such authority, Appellant's argument that the statute of frauds bars Nilhan, as one of the signatories, from paying the balance of the invoices is unavailing.

Further, the bankruptcy court's finding that the invoices were joint and several to the collective clients may be analogized to the discretion a court enjoys in determining how to divide liability in awarding attorneys' fees and costs. *See Council for Periodical Distribs. Ass'ns v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987) ("In addition to having discretion on when to apportion fees, district courts also have discretion on *how* to divide liability for fees.") (emphasis in original); *see also United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006) (listing guideposts to inform the court's discretion). Continuing with this analogy, the bankruptcy court had the full record before it to make an informed decision, and, based on the analysis herein, the bankruptcy court did not abuse its discretion. Therefore, the bankruptcy court's finding that the invoices were joint and several to the collective clients is affirmed.

**B. Objection to Reasonableness**

Appellant also contends that the bankruptcy court clearly erred in finding that Appellant did not object to the reasonableness of Appellee's requested fees and expenses.[4] (Doc. 12 at 8, 10).

---

[4] Appellant labels the heading for this argument as "Local counsel exceeded the scope of its work and the fees it requested were unauthorized and unreasonable." (Doc. 12 at 8). Without offering further argument or authority, Appellant claims in passing that Appellee "billed for services that were unnecessary, and unreasonable, and therefore should not have been found to have been such." *Id.* at 9. Appellant similarly claims, in the same manner, that Appellee's unauthorized services should not be compensable in his "Summary of Argument" section. Although briefs filed by *pro se* litigants must be read liberally, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). "A party fails to adequately 'brief' a claim where he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to those claims.'" *Sapuppo v. Allstate Floridan Ins. Co.*, 739 F.3d 679, 681 (11th Cir. 2014). "An appellant abandons a claim where he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."

Appellant contends that he objected to the reasonableness of the fees on the basis that the work performed exceeded the scope of Appellee's role as local counsel. *Id.* Upon review, the bankruptcy court did not clearly err.

Preliminarily, the Objection did not contest the reasonableness of the legal fees and costs charged by Appellee's attorneys. However, one of the grounds stated in the Objection was that the Claim was "subject to valid defenses." (Doc. 7-6 at 2). During the trial below, when Appellant's counsel initially sought to review billing invoices from Appellee, Appellee objected, claiming that specific references to the invoices exceeded the scope of the Objection. (Doc. 11 at 109:20–25, 110:1–3). Appellant's counsel pointed to the "subject to valid defenses" language within the Objection. *Id.* at 110:5–10. The bankruptcy court at first overruled the objection without prejudice, stating that the objection would be considered as part of argument at the conclusion of the trial. *Id.* at 110:23–25. In response to this ruling, Appellant's counsel stated:

> The only thing I'm highlighting – the only thing I'm going to be highlighting in the individual bills is the fact that Mr. Thakkar did not believe that King Blackwell was *authorized* to do this. This was the work that was to be done by general counsel. I'm just going to point out three or four matters which King Blackwell claims to have worked on that Mr. Thakkar didn't hire them to do. Those are the only – that's the only point of reference to the bills.

*Id.* at 112:12–20 (emphasis added).

---

*Id. See also Pouyeh v. Bascom Palmer Eye Institute*, 613 F. App'x 802, 806–807 (11th Cir. 2015) (reciting this principle in the context of a *pro se* brief). A party may abandon an issue when the passing references to it are made in the "statement of the case" or the "summary of argument." *Sapuppo*, 739 F.3d at 681–82. To the extent that Appellant intends to raise these issues on appeal, he raises them in a perfunctory manner, hidden in the brief and without further argument or authority. He does not raise these issues "plainly and prominently." A review of the body of Appellant's argument for this second issue reveals that his argument is focused on his assertion that the bankruptcy court clearly erred in finding that he did not object to the reasonableness of the fees and expenses.

Thus, Appellant's counsel focused on select billing entries only to highlight that Appellee performed work that Georgia Counsel purportedly should have completed. The bankruptcy court clarified that it would allow this limited line of questioning, but sustained the objection as to the reasonableness of the fees "and to that nature," interpreting "subject to valid defenses" as referring to those defenses subsequently listed in the Objection and not "mean[ing] anything else in the context of this." *Id.* at 112:21–25, 113:1–3.

Thereafter, Appellant examined a few billing entries in the invoices and testified that he did not authorize Appellee's attorneys to perform the corresponding work. *E.g.*, *id.* at 113:14–18. As Appellant examined these entries and testified which tasks were to be performed by Appellee's attorneys, Appellee objected again, contending that the testimony exceeded the scope of the Objection because Appellant was "talking about specific entries of work" and "flyspecking the bills." *Id.* at 116:23–25. Appellant again relied upon the "subject to valid defenses" language within the Objection. *Id.* at 117:21–24. The bankruptcy court treated the objection as a proffer and allowed Appellant to "make his record" while preserving Appellee's objection so that the bankruptcy court could rule on the merits of all objections. *Id.* at 119:20–25. The bankruptcy court reasoned that limiting the testimony to only those grounds raised in the Objection could lead to an appeal resulting in a remand, whereas hearing Appellant's objections beyond those listed in the Objection would allow the bankruptcy court to rule on the merits. *Id.* at 119:11–19. As such, ruling against Appellee after considering objections beyond the scope of the Objection would give Appellee a right to appeal based on the consideration of those objections, but ruling in favor of Appellee would give Appellee "belts and suspenders on Mr. Thakkar's appeal." *Id.* at 120:1–4.

As such, in issuing its contemporaneous oral ruling following the conclusion of testimony, the bankruptcy court recognized that it had allowed the admission of certain evidence,

notwithstanding the limited grounds raised in the Objection. *Id.* at 217:20–25, 218:1–10. The bankruptcy court found that the legal fees included in the Proof of Claim were reasonably *incurred* based upon the relationship of Appellee and Georgia Counsel, Georgia Counsel's decision to utilize Appellee's attorneys, the condition of the State Court Actions upon the retention of Appellee's attorneys, the work completed by Appellee's attorneys to "save the sinking ship," Appellee working for all the Thakkar Entities, and a lack of credibility in Appellant's contention that he was blindsided by Appellee's attorneys performing work purportedly intended for Georgia Counsel. *Id.* at 218–222. The bankruptcy court held:

> So, based on all of that, it is my conclusion that the fees that have been included in Proof of Claim were reasonably incurred. There's no complaint about the hourly rates, there's no complaint that there was too much time spent on researching this or that. In fact, there's no complaint about reasonableness.

*Id.* at 222:7–11.

Appellant contends that the bankruptcy court clearly erred in making the finding in the final sentence—that he did not complain about the reasonableness of the legal fees—on the basis that the work performed by Appellee's attorneys exceeded the scope of their role. (Doc. 12 at 10).

However, the bankruptcy court did not commit clear error. In reviewing the context of this finding, the Court construes the bankruptcy court's use of "reasonableness" as a reference to "reasonableness" in the context of the amount of legal fees under a lodestar determination. "Courts calculate attorney's fees using one of two methods: the percentage method or the lodestar method." *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019). "Under the lodestar method, courts determine attorney's fees based on the product of the reasonable hours spent on the case and a reasonable hourly rate." *Id.* Here, the bankruptcy court determined that Appellant had not complained about the "reasonableness" of the fees immediately after finding that Appellant had not complained about the hourly rates of Appellee's attorneys or that Appellee's attorneys spent

too much time conducting particular tasks. Thus, the bankruptcy court referred to the two foundational considerations for a lodestar analysis in finding that there had been no complaint about "reasonableness." The recognition that the bankruptcy court's use of "reasonableness" referred to "reasonableness" in the lodestar context is further bolstered by the bankruptcy court's emphasis—immediately following its finding that Appellant had not complained about reasonableness—on the amount of work performed by Appellee in the State Court Actions, as the bankruptcy court stated that Appellee could have faced professional liability if its attorneys did not perform the amount of work that they accomplished. (Doc. 11 at 222:11–21). Of course, the bankruptcy court's use of "reasonableness" in this manner simply shows that the bankruptcy court found that Appellant did not object to the hourly rates or the amount of time expended on particular tasks, not that the bankruptcy court conducted a lodestar analysis.

Although Appellant's counsel briefly stated during his opening statement that Appellant "believe[d] that the fees are excessive on their own terms," a review of the record below does not demonstrate that, during the presentation of evidence, Appellant objected to the hourly rate charged by Appellee's attorneys as unreasonable or objected to the amount of time expended on particular tasks as unreasonable. *Id.* at 96:14–15. Rather, Appellant testified that Appellee's attorneys were not authorized to perform entire portions of work. For example, Appellant testified that he did not authorize Appellee's attorneys to prepare summary judgment motions or prepare proposed orders on motions for reconsideration. *Id.* at 114:16–20, 23–25, 115:1–4. Indeed, Appellant's purported understanding regarding the minimal role that Appellee's attorneys would play in the State Court Actions was a consistent theme in the trial. In his closing argument, Appellant's counsel emphasized that Appellant retained Georgia Counsel and received a large sum

of legal invoices from Appellee, which contravened his understanding of Appellee's role. *Id.* at 216:24–25, 217:1–6. He did not submit any argument about reasonableness during his closing.

On appeal, Appellant points to portions of his testimony regarding allegedly unauthorized "type[s] of work" to show that he contested reasonableness and, therefore, the bankruptcy court erred. (Doc. 12 at 9). However, whether Appellee's attorneys were authorized to perform entire types of work is distinguishable from an objection addressing an hourly rate or the amount of time expended on particular tasks. Appellant's testimony that there was "very, very little, if any, activity related to Nilhan" is also distinguishable from an objection addressing an hourly rate or the amount of time expended on particular tasks. *Id.* (internal quotation marks omitted). A review under the highly deferential clear error standard does not leave the Court with the "definite and firm conviction" that the bankruptcy court committed a mistake in finding that Appellant did not object to the reasonableness of the fees. *Morrissette-Brown*, 506 F.3d at 1319. As such, the bankruptcy court's finding that there was not a complaint about reasonableness is due to be affirmed.

## IV. CONCLUSION

Based on the foregoing analysis, the bankruptcy court's findings that the invoices were joint and several to the collective clients and that there was not a complaint about reasonableness are each affirmed. As these issues constitute Appellant's only issues on appeal, the Order Overruling Objection is due to be affirmed.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Bankruptcy Court's Order Overruling Objection to Claim Number 6 Filed by King, Blackwell, Zehnder & Wermuth, P.A. (Doc. 2) is **AFFIRMED**.
2. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 8, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any